Daniel S. Robinson (SBN 244245)
Michael W. Olson (SBN 312857)
**ROBINSON CALCAGNIE, INC.**
19 Corporate Plaza Dr.
Newport Beach, CA 92660
(949) 720-1288; Fax: (949) 720-1292
drobinson@robinsonfirm.com
molson@robinsonfirm.com

Todd S. Garber (*Pro Hac Vice* Forthcoming)
**FINKELSTEIN, BLANKINSHIP**
**FREI-PEARSON & GARBER, LLP**
One North Broadway, Suite 900
White Plains, New York 10601
(914) 298-3281
tgarber@fbfglaw.com

*Attorneys for Plaintiff and The Proposed Class*

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PATRICIA GILES, *individually, and on behalf of all others similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>EPISOURCE, LLC,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Patricia Giles ("Plaintiff"), individually and on behalf of all persons who are similarly situated ("Class Members"), file this Class Action Complaint ("Complaint") against Defendant Episource, LLC ("Episource" or "Defendant") and complains and alleges upon personal knowledge as to herself and information and belief as to all other matters.

## NATURE OF THE ACTION

1. Plaintiff and the proposed Class Members bring this class action lawsuit on behalf of all persons who entrusted with sensitive Personally Identifiable Information ("PII") and Protected Health Information ("PHI") (collectively "Private Information") that was impacted in a data breach that Defendant in or around February 2025 (the "Data Breach" or the "Breach"). The Private Information disclosed in the Data Breach included Plaintiff and Class Members' names, dates of birth, addresses, phone numbers, email addresses, health plans/policies, insurance companies, member/group ID numbers, Medicaid-Medicare-government payor ID numbers, medical record numbers, doctors, diagnoses, medicines, test results, images, care, and treatment.[1]

2. Defendant is a provider of risk adjustment services, software, and solutions for health plans and provider groups, including commercial, Medicaid, and Medicare payers and providers.

3. Episource detected unusual activity in our computer systems and thereafter, determined that "a cybercriminal was able to see and take copies of some data in our computer systems. This happened between January 27, 2025, and February 6, 2025".

4. As a result of the Data Breach, sensitive and protected Private Information, as identified above, was accessed and copied by an unauthorized third

---

[1] *See* Episource, Notice Of Data Breach, https://response.idx.us/episource/ (lasted visited July 1, 2025) (the "Notice Letter").

party.

5. Upon information and belief, Episource has a privacy policy that is provided upon accepting services.

6. Defendant promises in its privacy policy to "maintain administrative, technical, and physical safeguards designed to protect the Information that you provide on our Online Services."

7. Defendant Episource agreed to and undertook legal duties to maintain the protected personal information entrusted to it by Plaintiff and Class Members safely, confidentially, and in compliance with all applicable laws, including the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45 and the California Online Privacy Protection Act.

8. Yet, through its failure to properly secure the Private Information of Plaintiff and the Class, Episource has not adhered to its own promises of individuals' rights.

9. The Private Information held by Defendant Episource in its computer system and network included the highly sensitive Private Information of Plaintiff and Class Members.

10. As a direct consequence of the Data Breach, Plaintiff and Class Members are now at a heightened risk of identity theft and fraud.

11. Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure that Plaintiff and Class members' Private Information was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use.

12. Plaintiff and Class Members would not have provided their valuable Private Information had they known that Defendant would make their Private

Information Internet-accessible, not encrypt personal and sensitive data elements and not delete the Private Information it no longer had reason to maintain.

13. Through this lawsuit, Plaintiff seeks to hold Defendant responsible for the injuries they inflicted on Plaintiff and Class Members due to their impermissibly inadequate data security measures, and to seek injunctive relief to ensure the implementation of security measures to protect the Private Information that remains in Defendant's possession.

14. Plaintiff brings this action on behalf of herself and all persons whose Private Information was compromised as a result of Defendant's failure to: (i) adequately protect the Private Information of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; (iii) effectively secure hardware containing protected Private Information incidents; and (iv) timely notify Plaintiff and Class Members of the Data Breach. Defendant's conduct amounts to at least negligence and violates federal and state statutes.

**PARTIES**

15. Plaintiff is, and at all relevant times has been, a resident and citizen of Brooklyn, New York. Plaintiff received a letter from Defendant informing her of the Data Breach.

16. Defendant is a limited liability company organized under the laws of the State of California, maintaining its principal place of business at 500 West 190th Street, 4th Floor, Gardena, California, 90248.

**JURISDICTION AND VENUE**

17. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendant.

18. This Court has personal jurisdiction over Defendant because Defendant is headquartered in California, its principal place of business is in California, and it regularly conducts business in California.

19. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in, was directed to, and/or emanated from this District, Defendant is based in this District, Defendant maintains patients' Private Information in the District, and have caused harm to Plaintiff and Class Members residing in this District.

## **FACTUAL ALLEGATIONS**

20. Episource is a company that provides "medical coding and risk adjustment services to doctors, health plans, and other health companies."[2]

21. Episource claims to have "lobal team of over 8,000 coders, engineers, and analysts leverage multifaceted data solutions and industry-leading expertise to help solve the trickiest problems and realize unmet potential."[3]

22. Defendant provides risk adjustment services to healthcare providers and health plans. Describing itself as providing "innovative healthcare payer solutions" and supporting "leading risk-bearing [healthcare] providers," Defendant's software platform supports payers and healthcare providers through "all aspects of risk adjustment, including analytics, record retrieval, medical chart coding, and more[]", Episource is headquartered in Gardena, California and has a "global team" of over "8,000 coders, engineers, and analysts[.]"

23. As a core part of its business and as a condition of providing services to Plaintiff and Class Members, Defendant collects highly sensitive client and patient data, including comprehensive patient health records and other Private Information. Episource's marketing demonstrates that it is well-aware that data security is a key

---

[2] https://response.idx.us/episource/ (last visited July 1, 2025).

[3] https://www.episource.com/company/ (last visited July 1, 2025).

component of the services it provides to its customers. The following examples illustrate how Episource markets and highlights the strength of its data security practices to entice customers to use Episource's products and services, as well as Episource's awareness of industry guidance and regulations that set standards for effective data security practices:

- Episource understands that "[e]ach time a client shares their data with us, they're placing their utmost trust in us to keep that information safe."
- As a result, Episource claims "[t]hat's why we consistently maintain our compliance certifications year after year. ***At Episource, we are committed to ensuring all of our solutions and services meet the regulatory requirements set by the risk adjustment and healthcare industries.*** We are HITRUST CSF Certified, ISO 27001 Certified, and NIST Certified."[4]
- Episource's Privacy Policy represents "[w]e recognize that the privacy of your information is important."[5]
- Episource's Privacy Policy also represents that "[w]e maintain administrative, technical, and physical safeguards designed to protect the Information that you provide on our Online Services."[6]

24. Defendant's privacy policy assures its clients' patients that it is committed to protecting the privacy of the Private Information. Defendant implicitly and/or explicitly represented to Plaintiff and Class Members, that their Private Information would be secured.

25. Defendant had duties and obligations through common law, federal regulations, contracts, industry standards, and their representations to Plaintiff and Class Members that Defendant would adopt reasonable measures to protect the

---

[4] https://www.episource.com/ (last visited July 1, 2025).

[5] https://www.episource.com/privacy/ (last visited July 1, 2025).

[6] *Id.*

Private Information of Plaintiff and Class Members from third party actors.

26. Despite Defendant's duties and obligations, Defendant failed to maintain sufficient security to protect their systems. This catastrophic failure led to the Data Breach, affecting at least 5.4 million individuals.

27. Defendant's privacy policy assures its clients' patients that it is committed to protecting the privacy of the Private Information.

**THE DATA BREACH**

28. A Data Breach occurs when cybercriminals intend to access and steal Private Information that has not been adequately secured by a business entity like Episource.

29. On or about June 6, 2025, Episource began sending letters to Plaintiff and members of the Class informing them that "[o]n February 6, 2025, Episource found unusual activity in our computer systems." A notice of the Data Breach is also linked on Defendant's website. In the Notice Letter, Episource further acknowledged that the information accessed in the Data Breach included contact information, "such as name, address, phone number, and email" and "one or more of the following:"

- Health insurance data (such as health plans/policies, insurance companies, member/group ID numbers, and Medicaid-Medicare-government payor ID numbers);
- Health data (such as medical record numbers, doctors, diagnoses, medicines, test results, images, care, and treatment);
- Other personal data such as date of birth.

30. Defendant did not state why it was unable to prevent the Data Breach or which security feature(s) failed. Additionally, Defendant did not state 1) how the unauthorized actors gained access 2) how Defendant failed to detect these intrusions, and 3) how Defendant intends to avoid these types of incidents in the future.

31. Defendant failed to prevent the Data Breach because it did not adhere to commonly accepted security standards and failed to detect that its databases were

subject to a security breach.

32. The Data Breach affected approximately 5,470,000 individuals, including Plaintiff and Class Members, who ultimately entrusted their Private Information to Defendant.[7]

33. Defendant's failure is even more egregious when considering the increase in high profile Data Breaches suffered by other health-related organizations in recent years.

34. These data breaches have been a consistent problem for the past several years, providing Defendant sufficient time and notice to improve the security of their systems and engage in stronger, more comprehensive cybersecurity practices.

35. PII is a valuable property right.[8] The value of PII as a commodity is measurable.[9] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[10] American companies are estimated to have spent over $19 billion in 2019 on acquiring consumers' personal data. In fact, it is so valuable to identity thieves that once PII has been disclosed, criminals often trade it on the "cyber black-market," or the "dark web," for many years.

36. Because of its real value and the recent large-scale data breaches,

---

[7] *See* Steve Alder, Jun 16, 202, Episource Ransomware Attack Affects More Than 5.4 Million Individuals https://www.hipaajournal.com/episource-data-breach/.

[8] *See* Marc van Lieshout, *The Value of Personal Data*, 457 IFIP ADVANCES IN INFO. AND COMMC'N. TECH. 26 (May 2015), https://www.researchgate.net/publication/283668023_The_Value_of_Personal_Data ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible . . . .").

[9] *See* Robert Lowes, *Stolen EHR [Electronic Health Record] Charts Sell for $50 Each on Black Market*, MEDSCAPE (Apr. 28, 2014), http://www.medscape.com/viewarticle/824192.

[10] *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD 4 (Apr. 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en.

identity thieves and cybercriminals have openly posted credit card numbers, Social Security numbers, and other PII directly on various Internet websites, making the information publicly available. This information from various breaches, including the information exposed in the Data Breach, can be aggregated and become more valuable to thieves and more damaging to victims.

37. Consumers place a high value on the privacy of their PII. Researchers shed light on how much consumers value their data privacy - - and the amount is considerable. ¬Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[11]

38. Given these factors, any company that transacts business with a consumer and then compromises the privacy of consumers' PII has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

39. Even more valuable to criminals is PHI. Entities in custody of PHI and/or medical information reported the largest number of data breaches among all measured sectors in 2022, with the highest rate of exposure per breach. Indeed, when compromised, healthcare related data is among the most sensitive and personally consequential. A report focusing on healthcare breaches found the "average total cost to resolve an identity theft-related incident . . . came to about $20,000," and that victims were often forced to pay out of pocket costs for healthcare they did not receive in order to restore coverage. Almost 50 percent of the victims lost their healthcare coverage as a result of the incident, while nearly 30 percent said their insurance premiums went up after the event. 40 percent of the patients were never

[11] Janice Y. Tsai, et al., *The Effect of Online Privacy Information on Purchasing Behavior: An Experimental Study*, 22(2) INFO. SYS. RSCH. 254 (June 2011), https://www.jstor.org/stable/23015560?seq=1.

able to resolve their identity theft at all. Data breaches and identity theft have a crippling effect on individuals and detrimentally impact the economy as a whole.[12]

40. This data commands a much higher price on the black market. "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[13]

41. Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the Private Information of Plaintiff and Class Members from being compromised.

42. Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's server(s), amounting to thousands of individuals detailed Private Information, and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

***Defendant Fails to Comply with FTC Guidelines***

43. The Federal Trade Commission ("FTC") has promulgated many guides for businesses which show how important it is to implement reasonable data security practices. According to the FTC, the need for data security should shape all business decision-making.

44. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal patient information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their

---

[12] *See* Elinor Mills, Study: Medical identity theft is costly for victims, CNET (March 3, 2010), https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/ (last visited July 1, 2025).

[13] Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers, IT World, (Feb. 6, 2015), available at: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html, last accessed on July 1, 2025.

network's vulnerabilities; and implement policies to correct any security problems.[14] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor incoming traffic for activity suggesting someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[15]

45. Defendant was required to implement fundamental data security practices in line with FTC guidelines. Its failure to do so, particularly in safeguarding against unauthorized access to patients' PII and PHI, is considered an unfair practice under the Section 5 of the FTC Act.

46. Defendant was fully aware of its obligations to protect sensitive patient data and the severe consequences of failing to meet these obligations. Despite this knowledge, Defendant did not take the necessary steps to comply with the FTC guidelines, leaving patient data vulnerable and exposed.

47. Defendant's failure to implement basic security measures, is not only a failure to comply with FTC guidelines, but also unnecessarily risked the privacy and security of its client's data.

48. Such frameworks are the existing and applicable industry standards in the healthcare industry. And Episource failed to comply with these accepted standards, thus opening the door to criminals and the Data Breach.

***Defendant Fails To Comply With HIPAA Guidelines***

49. Defendant is a covered entity under HIPAA (45 C.F.R. § 160.102) and is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually

---

[14] Federal Trade Commission, Protecting Personal Information: A Guide for Business (2016), available at www.ftc.gov/system/files/documents/plainlanguage/pdf-0136_proteting-personal-information.pdf (last visited July 1, 2025).

[15] *Id.*

Identifiable Health Information”), and Security Rule (“Security Standards for the Protection of Electronic Protected Health Information”), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

50. HIPAA rules establish national standards to protect patient’s health information, as defined by the Act as “individually identifiable health information” which either “identifies the individual” or where there is a “reasonable basis to believe the information can be used to identify the individual,” that is held or transmitted by a healthcare provider. See 45 C.F.R. § 160.103.

51. HIPAA requires Defendant to: (a) ensure the confidentiality, integrity, and availability of all electronic PHI they create, receive, maintain, or transmit; (b) identify and protect against reasonably anticipated threats to the security or integrity of the electronic PHI; (c) protect against reasonably anticipated, impermissible uses, or disclosures of the PHI; and (d) ensure compliance by their workforce to satisfy HIPAA’s security requirements. 45 C.F.R. § 164.102, et seq.

52. Defendant is subject to the rules and regulations for safeguarding electronic forms of medical information pursuant to the Health Information Technology Act (“HITECH”). See 42 U.S.C. §17921, 45 C.F.R. § 160.103.

53. HIPAA’s Privacy Rule or Security Standards for the Protection of Electronic Protected Health Information establishes a national set of security standards for protecting health information that is kept or transferred in electronic form.

54. HIPAA requires “compl[iance] with the applicable standards, implementation specifications, and requirements” of HIPAA “with respect to electronic protected health information.” 45 C.F.R. § 164.302.

55. “Electronic protected health information” is “individually identifiable health information . . . that is (i) transmitted by electronic media; maintained in electronic media.” 45 C.F.R. § 160.103.

56. HIPAA’s Security Rule requires Defendant to do the following:

a. Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits.

b. Protect against any reasonably anticipated threats or hazards to the security or integrity of such information.

c. Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

d. Ensure compliance by its workforce.

57. Additionally, HIPAA also requires Covered entities to provide notification following a breach of unsecured protected health information by way of the HIPAA Breach Notification Rule. *See* 45 CFR §164.400-414.

58. Given the application of HIPAA to Defendant, and that Plaintiff and Class Members directly or indirectly entrusted their PHI to Defendant, Plaintiff and Class Members reasonably expected that Defendant would safeguard their highly sensitive information and keep their PHI confidential.

***Injuries to Plaintiff and Class Members***

59. As a direct and proximate result of Defendant's actions and omissions in failing to protect Plaintiff and Class members' Private Information, Plaintiff and Class Members have been injured. Plaintiff and Class Members have been placed at a substantial risk of harm in the form of credit fraud or identity theft and have incurred and will likely incur additional damages, including spending substantial amounts of time monitoring accounts and records, in order to prevent and mitigate credit fraud, identity theft, and financial fraud.

60. Plaintiff is very careful about sharing her sensitive PII/PHI. Plaintiff has never knowingly transmitted unencrypted PII/PHI over the internet or any other unsecured source.

61. Because of the Data Breach, Defendant directed Plaintiff to take certain steps to protect her PII/PHI and otherwise mitigate her damages.

62. Because of the Data Breach, Plaintiff spent time dealing with the consequences of the Data Breach, which includes time spent self-monitoring financial accounts, and correcting her medical files that were altered without her authorization due to fraudulent activities. This time has been lost forever and cannot be recaptured. And this time was spent at Defendant's direction by way of the Data Breach notice where Defendant recommended that Plaintiff mitigate her damages by, among other things, monitoring her accounts for fraudulent activity.

63. Plaintiff suffered emotionally over the stress resulting from the Data Breach and her substantially increased risk of identity theft, such as the possibility of criminals using her PII/PHI to open bank accounts or commit other frauds.

64. Plaintiff suffered actual injury resulting from the Data Breach. Since the Data Breach, Plaintiff has experienced various fraudulent activities and/or attempts. For example, in or around May 2025, Plaintiff was advised by her doctor's office that a Pennsylvania address was associated with her file while Plaintiff has never resided in Pennsylvania, and an increasing number of spam calls and messages, including suspicious calls from supposed medical facilities and prescription agencies that she does not get health care from.

65. Plaintiff suffered actual injury in the form of damages to and diminution in the value of Plaintiff's PII/PHI that Plaintiff entrusted to Defendant, which was compromised because of the Data Breach. Plaintiff suffered lost time, annoyance, interference, insecurity, and inconvenience because of the Data Breach and has increased concerns for the loss of her privacy.

66. Plaintiff and other Class Members have suffered injury and damages, including but not limited to Data breaches are more than just technical violations of their victims' rights. By accessing a victim's personal information, the cybercriminal can ransack the victim's life: withdraw funds from bank accounts, get new credit cards or loans in the victim's name, lock the victim out of their financial or social media accounts, send out fraudulent communications masquerading as the

victim, file false tax returns, destroy their credit rating, and more.[16]

67. As a result, Plaintiff and all other Class Members have suffered injury and damages, including, but not limited to (i) a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their PII/PHI; (iii) deprivation of the value of their PII/PHI, for which there is a well-established national and international market; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Private Information; and (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of identity theft and medical identity theft they face and will continue to face.

68. Furthermore, Defendant has failed to provide adequate compensation to Plaintiff and Class Members harmed by its negligence. To date, Defendant has offered Plaintiff and Class Members a complimentary credit monitoring service that is available for a limited time period. Even if affected individuals accept the credit monitoring service, it will not provide them with any compensation for the costs and burdens associated with fraudulent activity resulting from the Data Breach that took place prior to signing up for the service. Defendant has not offered Class Members any assistance in dealing with the IRS or state tax agencies. Nor has Defendant offered to reimburse Plaintiff and Class Members for any costs incurred as a result of falsely filed tax returns, a common consequence of data breaches.

69. The offered credit monitoring service is inadequate to protect Class Members from the threats they face. It does nothing to protect against identity theft. Instead, it only provides various measures to identify identity theft once it has

[16] *See* Laura Pennington, *Recent Data Breach Trends Mean Your Info Was Likely Stolen Last Year*, TOP CLASS ACTIONS (Jan. 28, 2019), https://topclassactions.com/lawsuit-settlements/privacy/data-breach/875438-recent-data-breach/.

already been committed.

70. The offered credit monitoring services are also wholly inadequate in that they fail to provide for the fact that victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft and financial fraud and they entirely fail to provide any compensation for the unauthorized release and disclosure of Plaintiff's and Class Members' PII and PHI.

71. Yet, Defendant has failed to provide transparency regarding the cause of the Data Breach, instead placing the burden on Plaintiff and Class Members to address the issue themselves.

## CHOICE OF LAW

72. The State of California has a significant interest in regulating the conduct of businesses operating within its borders. California seeks to protect the rights and interests of all California residents and citizens of the United States against a company headquartered and doing business in California. California has a greater interest in the nationwide claims of Plaintiff and members of the Nationwide Class than any other state and is most intimately concerned with the claims and outcome of this litigation.

73. The corporate headquarters of Defendant, located in Gardena, California, is the "nerve center" of their business activities – the place where their officers direct, control, and coordinate the companies' activities, including their data security functions and policy, financial, and legal decisions.

74. Based on information and belief, Defendant's response to the Data Breach at issue here, and corporate decisions surrounding such response, were made from and in California.

75. Based on information and belief, Defendant's breaches of duty to Plaintiff and Nationwide Class Members emanated from California.

76. Application of California law to the Nationwide Class with respect to Plaintiff's and Class Members' claims is neither arbitrary nor fundamentally unfair

because California has significant contacts and a significant aggregation of contacts that create a state interest in the claims of Plaintiff and the Nationwide Class.

77. Under California's choice of law principles, which are applicable to this action, the common law of California applies to the nationwide common law claims of all Nationwide Class Members. Additionally, given California's significant interest in regulating the conduct of businesses operating within its borders, California's Unfair Competition Law, Confidentiality of Medical Information Act, and California Consumer Privacy Act of 2018 may be applied to non-resident plaintiffs as against Defendant.

## CLASS ALLEGATIONS

78. Plaintiff brings this class action on behalf of herself and on behalf of all others similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

79. The Nationwide Class that Plaintiff seeks to represent is defined as follows:

> **Nationwide Class: All individuals whose Private Information was compromised in the Data Breach announced by Defendant that occurred on or about February 2025.**

80. In addition to the Nationwide Class, Plaintiff seeks certification of the following state Subclass:

> **California Subclass: All persons residing in California whose Private Information was compromised in the Data Breach announced by Defendant that occurred on or about February 2025.**

81. Excluded from the Class are Defendant's officers and directors, and any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Excluded also from the Class are members of the judiciary to whom this case is assigned, their families and members of their staff.

82. Plaintiff hereby reserves the right to amend or modify the class definitions with greater specificity or division after having had an opportunity to conduct discovery.

83. This action may be certified as a class action because it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements therein.

84. Numerosity: The Class is so numerous that joinder of all Class Members is impracticable. Episource's filings with the U.S. government indicates that there are over 5.4 million individuals whose data was implicated in the Data Breach. The Class is sufficiently numerous to warrant certification.

85. Typicality of Claims: Plaintiff's claims are typical of those of other Class Members because Plaintiff, like the unnamed Class, had her Private Information compromised as a result of the Data Breach. Plaintiff is a member of the Class, and her claims are typical of the claims of the members of the Class. The harm suffered by Plaintiff is similar to that suffered by all other Class Members, which was caused by the same misconduct by Defendant.

86. Adequacy: Plaintiff is an adequate representative of the Class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the Class Members and has no interests antagonistic to the Class Members. In addition, Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation. The claims of Plaintiff and the Class Members are substantially identical, as explained above.

87. Superiority: This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all Class Members is impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies

of time, effort, and expense, and promote uniform decision-making.

88. Predominance: Common questions of law and fact predominate over any questions affecting only individual Class Members. Similar or identical violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. For example, Defendant's liability and the fact of damages are common to Plaintiff and each member of the Class. If Defendant breached its duty to Plaintiff and Class Members, then Plaintiff and each Class member suffered damages by that conduct.

89. Injunctive Relief: Defendant has acted and/or refused to act on grounds that generally apply to the Class making injunctive and/or declaratory relief appropriate with respect to the Class under Fed. R. Civ. P. 23(b)(2).

## CAUSES OF ACTION

## COUNT I

### VIOLATION OF THE CALIFORNIA CONFIDENTIALITY OF MEDICAL INFORMATION ACT, CAL. CIV. CODE § 56, *ET SEQ*.

**(On Behalf of Plaintiff and the Classes, or, alternatively, Plaintiff and the California Subclass)**

90. Plaintiff re-alleges and incorporate the above allegations as if fully set forth herein.

91. Plaintiff restates and realleges all of the foregoing paragraphs as if fully set forth herein.

92. Defendant is a healthcare provider, health care service plan, and/or contractor who are subject to the requirements and mandates of the California Confidentiality of Medical Information Act, Cal. Civ. Code § 56, et seq.

93. Defendant is deemed to be "provider[s] of health care" for purposes of the CMIA because they are "organized for the purpose of maintaining medical information in order to make the information available to an individual or to a

provider of health care at the request of the individual or a provider of health care." Cal. Civ. Code § 56.06(a).

94. Defendant is a "health care service plan" to the extent they are an "entity regulated pursuant to the Knox-Keene Health Care Service Plan Act of 1975 (Chapter 2.2 (commencing with Section 1340) of Division 2 of the Health and Safety Code)." Cal. Civ. Code § 56.05(f).

95. Defendant is "contractor" to the extent it is a "person or entity that is a medical group, independent practice association, pharmaceutical benefits manager, or a medical service organization and is not a health care service plan or provider of health care. 'Contractor' does not include insurance institutions as defined in subdivision (k) of Section 791.02 of the Insurance Code or pharmaceutical benefits managers licensed pursuant to the Knox-Keene Health Care Service Plan Act of 1975 (Chapter 2.2 (commencing with Section 1340) of Division 2 of the Health and Safety Code).'" Cal. Civ. Code § 56.05(d).

96. Plaintiff and Class members are "patient[s]," "whether or not still living, who received health care services from a provider of health care and to whom medical information pertains." Cal. Civ. Code § 56.05(l).

97. Plaintiff and Class members are "Enrollees" pursuant to Civil Code § 56.05(e) to the extent they are a "person who is enrolled in a plan and who is a recipient of services from the plan." See Cal. Health & Safety Code § 1345(c).

98. Plaintiff and Class members are "Subscribers" pursuant to Civil Code § 56.05(q) to the extent they are a "person who is enrolled in a plan and who is a recipient of services from the plan." See Cal. Health & Safety Code § 1345(p).

99. Plaintiff and Class members provided their personal medical information to Defendant.

100. At all relevant times, Defendant collected, stored, managed, and transmitted Plaintiff's and Class members' personal medical information.

101. Section 56.10(a) of the CMIA provides that "[a] provider of health care,

health care service plan, or contractor shall not disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization."

102. Section 56.101(a) of the CMIA provides that "[e]very provider of health care, health care service plan, pharmaceutical company, or contractor who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall do so in a manner that preserves the confidentiality of the information contained therein. Any provider of health care, health care service plan, pharmaceutical company, or contractor who negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall be subject to the remedies and penalties provided under subdivisions (b) and (c) of Section 56.36." Section 56.101(b)(1)(A) further provides that "[a]n electronic health record system or electronic medical record system . . . [p]rotect and preserve the integrity of electronic medical information."

103. Section 56.35 of the CMIA provides that "[i]n addition to any other remedies available at law, a patient whose medical information has been used or disclosed in violation of Section 56.10, 56.104, 56.107, or 56.20 or subdivision (a) of Section 56.26 and who has sustained economic loss or personal injury therefrom may recover compensatory damages, punitive damages not to exceed three thousand dollars ($3,000), attorney's fees not to exceed one thousand dollars ($1,000), and the costs of litigation."

104. Section 56.36(b) of the CMIA provides the following:

> In addition to any other remedies available at law, an individual may bring an action against a person or entity who has negligently released confidential information or records concerning him or her in violation of this part, for either or both of the following:
>
> (1) Except as provided in subdivision (e), nominal damages of one thousand dollars ($1,000). In order to recover under this paragraph, it is not necessary that the plaintiff suffered or was threatened with actual damages.

(2) The amount of actual damages, if any, sustained by the patient.

105. Defendant has misused, disclosed, and/or otherwise allowed third parties to access and view Plaintiff's and Class members' personal medical information without their written authorization in violation of Civil Code §§ 56.10, 56.11, 56.13, 56.26, and 56.101.

106. As a direct and proximate result of Defendant's wrongful actions, inaction, omissions, and want of ordinary care, Plaintiff's and Class members' personal medical information was disclosed without written authorization.

107. By disclosing Plaintiff's and Class members' Private Information without their written authorization, Defendant violated California Civil Code § 56, et seq., and their legal duty to protect the confidentiality of such information.

108. Defendant also violated Sections 56.06 and 56.101 of the California CMIA, which prohibit the negligent creation, maintenance, preservation, storage, abandonment, destruction or disposal of confidential personal medical information.

109. Defendant violated the CMIA by (1) failing to implement reasonable administrative, physical and technical safeguards to protect, secure and prevent the unauthorized access to, and acquisition of, Plaintiff's and Class members' personal medical information; (2) failing to implement reasonable data security measures, such as intrusion detection processes that detect data breaches in a timely manner, to protect and secure Plaintiff's and Class members' personal medical information; (3) failing to use reasonable authentication procedures to track Plaintiff's and Class members' personal medical information in case of a security breach; and (4) allowing undetected and unauthorized access to servers, networks and systems where Plaintiff's and Class members' personal medical information was kept, all in violation of the CMIA.

110. Defendant further violated the CMIA by affirmatively sharing and disclosing, and providing third parties with access to, Plaintiff's and Class Members'

medical information.

111. As a result of the Data Breach, unauthorized parties obtained personal medical information, viewed it, and now have it available to them to sell to others bad actors, including on the dark web, post the information on the dark web or otherwise misuse.

112. As a further result of the Data Breach, the confidential nature of Plaintiff's and Class members' medical information was breached as a result of Defendant's negligence. Specifically, Defendant knowingly allowed and affirmatively acted in a manner that actually allowed unauthorized parties to access and view Plaintiff's and Class members' Confidential Information, which was viewed and used when the unauthorized parties engaged in the above-described fraudulent activity.

113. Defendant's failure to implement adequate data security measures to protect the PHI of Plaintiff and Class members was a substantial factor in allowing unauthorized parties to access Defendant's computer systems and acquire the PHI of Plaintiff and California Subclass members.

114. As a direct and proximate result of Defendant's violation of the CMIA, Defendant allowed the PHI of Plaintiff and Class members to (a) escape and spread from its normal place of storage through unauthorized disclosure or release; and (b) be accessed and acquired by unauthorized parties in order to, view, mine, exploit, use, and/or profit from their personal medical information, thereby breaching the confidentiality of their personal medical information. Plaintiff and Class members have accordingly sustained and will continue to sustain actual damages as set forth above.

115. As a direct and proximate result of Defendant's wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiff's and Class Members' personal medical information was viewed by, released to, and disclosed to third parties without Plaintiff's and Class

members' written authorization.

116. As a direct and proximate result of Defendant's above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach and their violation of the CMIA, Plaintiff and Class members are entitled to (i) actual damages, (ii) nominal damages of $1,000 per Plaintiff and Class Member, (iii) punitive damages of up to $3,000 per Plaintiff and Class Member, and (iv) attorneys' fees, litigation expenses, and court costs under California Civil Code § 56.35 and 56.36.

**COUNT II**

**VIOLATION OF CALIFORNIA CONSUMER PRIVACY ACT, Cal. Civ. Code § 1798.150, *ET SEQ*.**

**(On Behalf of Plaintiff and the California Subclass)**

117. Plaintiff restates and realleges all the foregoing paragraphs as if fully set forth herein.

118. Cal. Civ. Code § 1798.150(a) of the California Consumer Privacy Act ("CCPA") provides that "[a]ny consumer whose nonencrypted and nonredacted personal information, as defined in subparagraph (A) of paragraph (1) of subdivision (d) of Section 1798.81.5 . . . is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action" for statutory damages, actual damages, injunctive relief, declaratory relief and any other relief the court deems proper.

119. California Subclass members are "consumers" as defined by Cal. Civ. Code § 1798.140(g) because they are natural persons who reside in California.

120. Defendant is a "business[es]" as defined by Cal. Civ. Code § 1798.140(c) because Defendant is a corporation organized for the profit or financial benefit of their shareholders or owners and have gross annual revenues in excess of

twenty-five million dollars.

121. Plaintiff and California Subclass members provided Defendant with their nonencrypted and nonredacted personal information as defined in § 1798.81.5 in the form of their PII/PHI. The information Plaintiff and California Subclass members provided to Defendant included medical information under the CMIA and protected health information under HIPAA, as well as non-medical patient information (such as social security numbers, addresses, dates of birth, telephone numbers, among other information).

122. Plaintiff alleges that Defendant

123. did not store all non-medical patient information in the same manner as they maintained medical information under the CMIA and protected health information under HIPAA. For instance, Defendant's non-medical patient information, such as billing details, contact information, and insurance data, was maintained with different security measures and/or made more accessible to a broader range of individuals than its systems that stored medical information under the CMIA and protected health information under HIPAA. Plaintiff also alleges that Defendant conducted different audits and monitoring for medical information consistent with its obligations under the CMIA and HIPAA (although such monitoring fell short) than it did with the non-medical patient information involved in the Data Breach. Plaintiff further alleges that Defendant had different incident response protocols for medical information than the non-medical patient information involved in the Data Breach. For the non-medical patient information that Defendant stored in a different manner than medical information under the CMIA and protected health information under HIPAA, Plaintiff brings a CCPA claim.

124. Defendant failed to take sufficient and reasonable measures to safeguard their data security systems and protect Plaintiff and California Subclass members' highly sensitive personal information and medical data from unauthorized access. Defendant's failure to maintain adequate data protections subjected Plaintiff

and the California Subclass members' nonencrypted and nonredacted sensitive personal information to exfiltration and disclosure by malevolent actors.

125. The unauthorized access, exfiltration, theft, and disclosure of Plaintiff and the California Subclass members' Confidential Information was a result of Defendant's violation of its duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information.

126. Under Defendant's duty to protect customers' Confidential Information, it was required to implement reasonable security measures to prevent and deter hacks from accessing the Confidential Information of its customers. That these vulnerabilities existed and enabled unauthorized third parties to access and harvest customers' Confidential Information evidence that Defendant has breached that duty.

127. Plaintiff and California Subclass members have suffered actual injury and are entitled to damages in an amount to be proven at trial but in excess of the minimum jurisdictional requirement of this Court.

128. Defendant's violations of Cal. Civ. Code § 1798.150(a) are a direct and proximate result of the Data Breach.

129. Plaintiff and California Subclass members seek all monetary and non-monetary relief allowed by law, including actual or nominal damages; statutory damages pursuant to Cal. Civ. Code § 1798.150(a)(1)(A) in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident or actual damages, whichever is greater; declaratory and injunctive relief, including an injunction barring Defendant from disclosing their PHI/PII without their consent; reasonable attorneys' fees and costs; and any other relief that is just and proper.

///

///

## COUNT III

## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE § 17200, *ET SEQ*. – UNLAWFUL, FRAUDULENT, AND UNFAIR BUSINESS PRACTICES

**(On Behalf of Plaintiff and the Classes, or, alternatively, Plaintiff and the California Subclass)**

130. Plaintiff restates and reallege all of the foregoing Paragraphs as if fully set forth herein.

131. The California Unfair Competition Law, Cal. Bus. & Prof. Code sections 17200, *et seq*. ("UCL"), prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising, as defined by the UCL and relevant case law.

132. By reason of Defendant's above-described wrongful actions, inaction, and omissions, the resulting Data Breach, and the unauthorized disclosure of Plaintiff and Class Members' Confidential Information, Defendant engaged in unlawful, unfair, and fraudulent practices within the meaning of the UCL.

133. Defendant has violated Cal. Bus. and Prof. Code § 17200, *et seq*., by engaging in unlawful, unfair, or fraudulent business acts and practices and unfair, deceptive, untrue, or misleading advertising that constitute acts of "unfair competition" as defined in Cal. Bus. Prof. Code § 17200 with respect to the services provided to the Nationwide Class.

134. Defendant's business practices as alleged herein are unfair because they offend established public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers, in that the Confidential Information of Plaintiff and Class Members has been compromised for unauthorized parties to see, use, and otherwise exploit.

135. Defendant's above-described wrongful actions, inaction, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiff's and Class Members Confidential Information also constitute "unfair"

business acts and practices within the meaning of Business & Professions Code sections 17200, *et seq*., in that Defendant's conduct was substantially injurious to Plaintiff and Class Members, offensive to public policy, immoral, unethical, oppressive and unscrupulous, and the gravity of Defendant's conduct outweighs any alleged benefits attributable to such conduct.

136. Defendant engaged in unlawful acts and practices with respect to the services by establishing the sub-standard security practices and procedures described herein; by soliciting and collecting Plaintiff's and Class Members Confidential Information with knowledge that the information would not be adequately protected; by violating the California Confidentiality Of Medical Information Act, Cal. Civ. Code § 56, *et seq*.; by violating the other statutes described above; and by storing Plaintiff's and Class Members Confidential Information in an unsecure electronic environment in violation of HIPAA and California's data breach statute, Cal. Civ. Code § 1798.81.5, which require Defendant to take reasonable methods of safeguarding the Confidential Information of Plaintiff and the Class Members.

137. Defendant's practices were also unlawful and in violation of Civil Code sections 1798, *et seq*. and Defendant's own privacy policy because Defendant failed to take reasonable measures to protect Plaintiff's and Class Members Confidential Information and failed to take remedial measures such as notifying its users when it first discovered that their Confidential Information may have been compromised.

138. In addition, Defendant engaged in unlawful acts and practices by failing to disclose the Data Breach in a timely and accurate manner, contrary to the duties imposed by Cal. Civ. Code § 1798.82 and Cal. Health & Safety Code §1280.15(b)(2).

139. Defendant's business practices as alleged herein are fraudulent because they are likely to deceive consumers into believing that the Confidential Information they provided to Defendant will remain private and secure, when in fact it has not been maintained in a private and secure manner, and that Defendant would take

proper measures to investigate and remediate a data breach, when Defendant did not do so.

140. Plaintiff and Class Members suffered (and continue to suffer) injury in fact and lost money or property as a direct and proximate result of Defendant's above-described wrongful actions, inaction, and omissions including, *inter alia*, the unauthorized release and disclosure of their Confidential Information and lack of notice.

141. But for Defendant's misrepresentations and omissions, Plaintiff and Class Members would not have provided their Confidential Information to Defendant, or would have insisted that their Confidential Information be more securely protected.

142. As a direct and proximate result of Defendant's unlawful practices and acts, Plaintiff and Class Members were injured and lost money or property, including but not limited to the price received by Defendant for the services, the loss of Plaintiff's and Class Members legally protected interest in the confidentiality and privacy of their Confidential Information, nominal damages, and additional losses as described herein.

143. Defendant knew or should have known that Defendant's computer systems and data security practices were inadequate to safeguard Plaintiff's and Class Members Confidential Information and that the risk of a data breach or theft was highly likely. Defendant's actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff and Class Members.

144. Plaintiff seeks prospective injunctive relief, including improvements to Defendant's data security systems and practices, in order to ensure that such security is reasonably sufficient to safeguard patients' Confidential Information that remains in Defendant's custody, including but not limited to the following:

a. Ordering that Defendant engage third-party security

auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

b. Ordering that Defendant engage third-party security auditors and internal personnel to run automated security monitoring;

c. Ordering that Defendant audit, test, and train their security personnel regarding any new or modified procedures;

d. Ordering that Defendant segment patient data by, among other things, creating firewalls and access controls so that if one area of Defendant's systems is compromised, hackers cannot gain access to other portions of Defendant's systems;

e. Ordering that Defendant not transmit Confidential Information via unencrypted email;

f. Ordering that Defendant not store Confidential Information in email accounts;

g. Ordering that Defendant purge, delete, and destroy in a reasonably secure manner patient data not necessary for provisions of Defendant's services;

h. Ordering that Defendant conduct regular computer system scanning and security checks;

i. Ordering that Defendant routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

j. Ordering Defendant to meaningfully educate their current, former, and prospective patients about the threats they face as a result of the

loss of their Confidential Information to third parties, as well as the steps they must take to protect themselves.

145. Unless such Class-wide injunctive relief is issued, Plaintiff and Class Members remain at risk, and there is no other adequate remedy at law that would ensure that Plaintiff (and other consumers) can rely on Defendant's representations regarding their data security in the future.

146. Furthermore, in the alternative to all legal remedies sought herein, Plaintiff, on behalf of the Class, seeks relief under Cal. Bus. & Prof. Code § 17200, *et seq.*, including, but not limited to, restitution to Plaintiff and Class Members of money or property that Defendant may have acquired by means of Defendant' unlawful, and unfair business practices, restitutionary disgorgement of all profits accruing to Defendant because of Defendant's unlawful and unfair business practices, declaratory relief, attorneys' fees and costs (pursuant to Cal. Code Civ. Proc. § 1021.5), and injunctive or other equitable relief.

## COUNT IV

## VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT CAL. CIV. CODE § 1750, *ET SEQ*.

**(On Behalf of Plaintiff and the Classes, or, alternatively, Plaintiff and the California Subclass)**

147. Plaintiff restates and realleges all the foregoing paragraphs as if fully set forth herein.

148. This cause of action is brought pursuant to the California Consumers Legal Remedies Act (the "CLRA"), California Civil Code § 1750, *et seq*.

149. Defendant is the party with the most knowledge of the underlying facts giving rise to Plaintiff's allegations, so that any pre-suit notice would not put Defendant in a better position to evaluate those claims. To the extent additional notice is required, Plaintiff will issue separate demands under Cal. Civ. Code § 1782(a). Plaintiff in the alternative seek only injunctive relief pursuant to Cal. Civ. Code § 1782, subdivision (d), which provides that "[a]n action for injunctive relief

brought under the specific provisions of Section 1770 may be commenced without compliance with subdivision (a)."

150. Plaintiff and Class Members are "consumers," as the term is defined by California Civil Code § 1761(d).

151. Plaintiff, Class Members, and Defendant have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

152. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant was likely to deceive consumers.

153. Cal. Civ. Code § 1770(a)(5) prohibits one who is involved in a transaction from "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have."

154. Defendant violated this provision by representing that it took appropriate measures to protect Plaintiff and the Class Members' Confidential Information. Additionally, Defendant improperly handled, stored, or protected either unencrypted or partially encrypted data.

155. Plaintiff and Class Members relied upon Defendant's representations and were induced to sign up for Defendant's services, and provide their Confidential Information which contains value in order to obtain services from Defendant.

156. As a result, Plaintiff and Class Members were induced to enter into a relationship with Defendant and provide their Confidential Information.

157. As a result of engaging in such conduct, Defendant have violated Civil Code § 1770.

158. Pursuant to Civil Code § 1780(a)(2) and (a)(5), Plaintiff seeks an order of this Court that includes, but is not limited to, an order enjoining Defendant from continuing to engage in unlawful, unfair, or fraudulent business practices or any other act prohibited by law.

159. Plaintiff and Class Members suffered injuries caused by Defendant's

misrepresentations, because they provided their Confidential Information believing that Defendant would adequately protect this information.

160. Plaintiff and Class Members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

161. The unfair and deceptive acts and practices of Defendant, as described above, present a serious threat to Plaintiff and Class Members.

162. Plaintiff seeks prospective injunctive relief, including improvements to Defendant's data security systems and practices, in order to ensure that such security is reasonably sufficient to safeguard patients' Confidential Information that remains in Defendant's custody, including but not limited to the following:

a. Ordering that Defendant engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

b. Ordering that Defendant engage third-party security auditors and internal personnel to run automated security monitoring;

c. Ordering that Defendant audit, test, and train their security personnel regarding any new or modified procedures;

d. Ordering that Defendant segment patient data by, among other things, creating firewalls and access controls so that if one area of Defendant's systems is compromised, hackers cannot gain access to other portions of Defendant's systems;

e. Ordering that Defendant not transmit Confidential Information via unencrypted email;

f. Ordering that Defendant not store Confidential Information in email accounts;

g. Ordering that Defendant purge, delete, and destroy in a reasonably secure manner patient data not necessary for provisions of Defendant's services;

h. Ordering that Defendant conduct regular computer system scanning and security checks;

i. Ordering that Defendant routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

j. Ordering Defendant to meaningfully educate their current, former, and prospective patients about the threats they face as a result of the loss of their Confidential Information to third parties, as well as the steps they must take to protect themselves.

163. Unless such Class-wide injunctive relief is issued, Plaintiff and Class Members remain at risk, and there is no other adequate remedy at law that would ensure that Plaintiff (and other consumers) can rely on Defendant's representations regarding their data security in the future.

164. Furthermore, in the alternative to all legal remedies sought herein, Plaintiff, on behalf of the Class, seeks monetary relief including but not limited to restitution to Plaintiff and Class Members of money or property that Defendant may have acquired by means of Defendant's unlawful, and unfair business practices; restitutionary disgorgement of all profits accruing to Defendant because of Defendant's unlawful and unfair business practices; declaratory relief; and attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

///

///

///

///

## COUNT V

### VIOLATION OF CALIFORNIA CONSUMER RECORDS ACT CAL. CIV. CODE § 1798.80 *ET SEQ.*

### (On Behalf of Plaintiff and the Classes, or, alternatively, Plaintiff and the California Subclass )

165. Plaintiff restates and realleges all of the foregoing paragraphs as if fully set forth herein.

166. Section 1798.2 of the California Civil Code requires any "person or business that conducts business in California, and that owns or licenses computerized data that includes personal information" to "disclose any breach of the security of the system following discovery or notification of the breach in the security of the data to any resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Under section 1798.82, the disclosure "shall be made in the most expedient time possible and without unreasonable delay . . . ."

167. The CCRA further provides: "Any person or business that maintains computerized data that includes personal information that the person or business does not own shall notify the owner or licensee of the information of any breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Cal. Civ. Code § 1798.82(b).

168. Any person or business that is required to issue a security breach notification under the CCRA shall meet all of the following requirements:

a. The security breach notification shall be written in plain language;

b. The security breach notification shall include, at a minimum, the following information:

i. The name and contact information of the reporting person or business subject to this section;

ii. A list of the types of personal information that were or are reasonably believed to have been the subject of a breach;

iii. If the information is possible to determine at the time the notice is provided, then any of the following:

1. The date of the breach;
2. The estimated date of the breach; or
3. The date range within which the breach occurred. The notification shall also include the date of the notice.

iv. Whether notification was delayed as a result of a law enforcement investigation, if that information is possible to determine at the time the notice is provided;

v. A general description of the breach incident, if that information is possible to determine at the time the notice is provided; and

vi. The toll-free telephone numbers and addresses of the major credit reporting agencies if the breach exposed a Social Security number or a driver's license or California identification card number.

169. The Data Breach described herein constituted a "breach of the security system" of Defendant.

170. As alleged above, Defendant unreasonably delayed informing Plaintiff and Class Members about the Data Breach, affecting their Personal and Medical Information, after Defendant knew the Data Breach had occurred.

171. Defendant failed to disclose to Plaintiff and Class Members, without unreasonable delay and in the most expedient time possible, the breach of security of their unencrypted, or not properly and securely encrypted, Personal and Medical Information when Defendant knew or reasonably believed such information had been compromised.

172. Defendant's ongoing business interests gave Defendant incentive to conceal the Data Breach from the public to ensure continued revenue.

173. Upon information and belief, no law enforcement agency instructed Defendant that timely notification to Plaintiff and Class Members would impede its investigation.

174. As a result of Defendant's violation of Cal. Civ. Code § 1798.82, Plaintiff and Class Members were deprived of prompt notice of the Data Breach and were thus prevented from taking appropriate protective measures, such as securing identity theft protection or requesting a credit freeze. These measures could have prevented some of the damages suffered by Plaintiff and Class Members because their stolen information would have had less value to identity thieves.

175. As a result of Defendant's violation of Cal. Civ. Code § 1798.82, Plaintiff and Class Members suffered incrementally increased damages separate and distinct from those simply caused by the Data Breach itself.

176. Plaintiff and Class Members seek all remedies available under Cal. Civ. Code § 1798.84, including, but not limited to the damages suffered by Plaintiff and Class Members as alleged above and equitable relief.

177. Defendant's misconduct as alleged herein is fraud under Cal. Civ. Code § 3294(c)(3) in that it was deceit or concealment of a material fact known to the Defendant conducted with the intent on the part of Defendant of depriving Plaintiff and Class Members of "legal rights or otherwise causing injury." In addition, Defendant's misconduct as alleged herein is malice or oppression under Cal. Civ. Code § 3294(c)(1) and (c)(2) in that it was despicable conduct carried on by Defendant with a willful and conscious disregard of the rights or safety of Plaintiff and Class Members and despicable conduct that has subjected Plaintiff and Class Members to hardship in conscious disregard of their rights. As a result, Plaintiff and Class Members are entitled to punitive damages against Defendant under Cal. Civ. Code § 3294(a).

## COUNT VI

## NEGLIGENCE

## (On Behalf of Plaintiff and the Classes)

178. Plaintiff restates and realleges all of the foregoing Paragraphs as if fully set forth herein.

179. As a condition of receiving services, Plaintiff and Class Members were obligated to provide Defendant directly, or through their affiliates, with their Confidential Information.

180. Plaintiff and Class Members entrusted their Confidential Information to Defendant with the understanding that Defendant would safeguard their information.

181. Defendant had full knowledge of the sensitivity of the Confidential Information and the types of harm that Plaintiff and Class Members could and would suffer if the Confidential Information were wrongfully disclosed.

182. Defendant had a duty to exercise reasonable care in safeguarding, securing and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining and testing its security protocols to ensure that Confidential Information in its possession was adequately secured and protected and that employees tasked with maintaining such information were adequately training on relevant cybersecurity measures.

183. Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew of or should have known of the inherent risks in collecting and storing the Confidential Information of Plaintiff and Class Members, the critical importance of providing adequate security of that Confidential Information, the current cyber scams being perpetrated, and that they had inadequate employee training and education and IT security protocols in place to secure the Confidential Information of Plaintiff and

Class Members.

184. Defendant's own conduct created a foreseeable risk of harm to Plaintiff and Class Members. Defendant's misconduct included, but was not limited to, their failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's misconduct also included their decision not to comply with HIPAA and industry standards for the safekeeping and encrypted authorized disclosure of the Confidential Information of Plaintiff and Class Members.

185. Plaintiff and Class Members had no ability to protect their Confidential Information that was in Defendant's possession.

186. Defendant was in a position to protect against the harm suffered by Plaintiff and Class Members as a result of the Data Breach.

187. Defendant had a duty to put proper procedures in place to prevent the unauthorized dissemination of Plaintiff's and Class Members' Confidential Information.

188. Defendant has admitted that Plaintiff's and Class Members' Confidential Information was wrongfully disclosed to unauthorized third persons as a result of the Data Breach.

189. Defendant, through its actions and/or omissions, unlawfully breached their duty to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' Confidential Information while it was within Defendant's possession or control.

190. Defendant improperly and inadequately safeguarded Plaintiff's and Class Members' Confidential Information in deviation of standard industry rules, regulations and practices at the time of the Data Breach.

191. Defendant, through its actions and/or omissions, unlawfully breached their duty to Plaintiff and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of its Plaintiff's and Class Members' Confidential Information.

192. Defendant, through its actions and/or omissions, unlawfully breached their duty to adequately disclose to Plaintiff and Class Members the existence and scope of the Data Breach.

193. But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and Class Members, Plaintiff's and Class Members' Confidential Information would not have been compromised and/or subsequently misused by unauthorized third parties to engage in fraudulent activity further harming Plaintiff and Class Members.

194. There is a temporal and close causal connection between Defendant's failure to implement security measures to protect the Confidential Information and the harm suffered, or risk of imminent harm suffered, by Plaintiff and the Class.

195. As a result of Defendant's negligence, unauthorized parties acquired Plaintiff's Confidential Information and used that specific information to harm Plaintiff and Class Members as described above. As a further result of Defendant's negligence, Plaintiff and Class Members have suffered and will continue to suffer damages and injury including, but not limited to, (a) actual identity theft; (b) an increased risk of identity theft, fraud, and/or misuse of their Confidential Information; (c) the loss of the opportunity of how their Confidential Information is used; (d) the compromise, publication, and/or theft of their Confidential Information; (e) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Confidential Information; (f) diminished value of the Confidential Information; (g) lost opportunity costs associated with efforts expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (h) the continued risk to their Confidential Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fail to undertake appropriate and

adequate measures to protect Confidential Information in their continued possession; and (i) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Confidential Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

196. Violations of statutes which establish a duty to take precautions to protect a particular class of persons from a particular injury or type of injury may constitute negligence *per se*.

197. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Confidential Information. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

198. Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiff's and Class Members' Confidential Information and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Confidential Information they obtained and stored, and the foreseeable consequences of a data breach including, specifically, the damages that would result to Plaintiff and Class Members.

199. Defendant's violation of Section 5 of the FTC Act constitutes negligence *per se*.

200. Plaintiff and Class Members are within the class of persons that the FTC Act was intended to protect.

201. The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same

harm as that suffered by Plaintiff and Class Members.

202. Defendant's violation of HIPAA also independently constitutes negligence *per se*.

203. HIPAA privacy laws were enacted with the objective of protecting the confidentiality of patients' healthcare information and set forth the conditions under which such information can be used, and to whom it can be disclosed. HIPAA privacy laws not only apply to healthcare providers and the organizations they work for, but to any entity that may have access to healthcare information about a patient that—if it were to fall into the wrong hands—could present a risk of harm to the patient's finances or reputation.

204. Plaintiff and Class Members are within the class of persons that HIPAA privacy laws were intended to protect.

205. The harm that occurred as a result of the Data Breach is the type of harm HIPAA privacy laws were intended to guard against.

206. As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered, and continue to suffer, injuries and damages arising from the Data Breach including, but not limited to an increased risk of identity theft, fraud, and/or misuse of their Confidential Information and damages from lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives, including, *inter alia*, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial and medical accounts, closely reviewing and monitoring their credit reports and various accounts for unauthorized activity, filing police reports, and damages from identity theft, which may take months if not years to discover and detect.

207. Additionally, as a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class Members have suffered and will suffer the continued risks of exposure of their Confidential Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as

Defendant fails to undertake appropriate and adequate measures to protect the Confidential Information in its continued possession.

**COUNT VII**

**INVASION OF PRIVACY**

**(On Behalf of Plaintiff and the Classes)**

208. Plaintiff restates and realleges all of the foregoing Paragraphs as if fully set forth herein.

209. California established the right to privacy in Article 1, Section 1 of the California Constitution.

210. The State of California recognizes the tort of Intrusion into Private Affairs, and adopts the formulation of that tort found in the Restatement (Second) of Torts which states:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person. Restatement (Second) of Torts § 652B (1977).

211. Plaintiff and Class Members had a legitimate and reasonable expectation of privacy with respect to their Confidential Information and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

212. Defendant owed a duty to patients in their network, including Plaintiff and Class Members, to keep their Confidential Information confidential.

213. The unauthorized release of Confidential Information, especially the type related to personal health information, is highly offensive to a reasonable person.

214. The intrusion was into a place or thing, which was private and is entitled

to be private. Plaintiff and Class Members disclosed their Confidential Information to Defendant as part of their use of Defendant's services, but privately, with the intention that the Confidential Information would be kept confidential and protected from unauthorized disclosure. Plaintiff and Class Members were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

215. The Data Breach constitutes an intentional interference with Plaintiff's and Class Members' interest in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

216. Defendant acted with a knowing state of mind when they permitted the Data Breach because they knew its information security practices were inadequate and would likely result in a data breach such as the one that harmed Plaintiff and Class Members.

217. Acting with knowledge, Defendant had notice and knew that their inadequate cybersecurity practices would cause injury to Plaintiff and Class Members.

218. As a proximate result of Defendant's acts and omissions, Plaintiff's and Class Members' Confidential Information was disclosed to and used by third parties without authorization in the manner described above, causing Plaintiff and Class Members to suffer damages.

219. Unless and until enjoined, and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that the Confidential Information maintained by Defendant can be viewed, distributed, and used by unauthorized persons.

220. Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members.

**COUNT VIII**

**BREACH OF CONTRACT**

**(On Behalf of Plaintiff and the Classes)**

221. Plaintiff restates and realleges all of the foregoing Paragraphs as if fully set forth

222. Plaintiff and other Class Members entered into valid and enforceable express contracts with Defendant under which Plaintiff and other Class Members agreed to provide their Confidential Information to Defendant, and Defendant agreed to their services for monetary compensation and, impliedly if not explicitly, agreed to protect Plaintiff's and other Class Members' Confidential Information.

223. These contracts include, but are not limited to, test requisition forms, patient signature cards, HIPAA authorization forms, and patient consent forms.

224. To the extent Defendant's obligation to protect Plaintiff's and other Class Members' Confidential Information was not explicit in those express contracts, the express contracts included implied terms requiring Defendant to implement data security adequate to safeguard and protect the confidentiality of Plaintiff's and other Class Members' Confidential Information, including in accordance with HIPAA regulations; federal, state and local laws; and industry standards. No Plaintiff would have entered into these contracts with Defendant without understanding that Plaintiff's and other Class Members' Confidential Information would be safeguarded and protected; stated otherwise, data security was an essential implied term of the parties' express contracts.

225. A meeting of the minds occurred, as Plaintiff and other Class Members agreed, among other things, to provide their Confidential Information to Defendant for which Defendant derives a monetary benefit, in exchange for Defendant's agreement to protect the confidentiality of that Confidential Information.

226. Both the provision of Defendant's services and the protection of Plaintiff's and other Class Members' Confidential Information were material aspects

of Plaintiff's and other Class Members' contracts with Defendant.

227. Defendant's promises and representations described above relating to HIPAA, CMIA, and industry practices, and about Defendant's purported concern about their patients' privacy rights became terms of the contracts between Defendant and their patients, including Plaintiff and other Class Members. Defendant breached these promises by failing to comply with HIPAA, CMIA, and reasonable industry practices.

228. Plaintiff and Class Members read, reviewed, and/or relied on statements made by or provided by Defendant and/or otherwise understood that Defendant would protect its patients' Confidential Information if that information were provided to Defendant.

229. Plaintiff and Class Members fully performed their obligations under the implied contract with Defendant; however, Defendant did not.

230. As a result of Defendant's breach of these terms, Plaintiff and other Class Members have suffered a variety of damages including but not limited to: the lost value of their privacy; they did not get the benefit of their bargain with Defendant; they lost the difference in the value of the secure health services Defendant promised and the insecure services received; the value of the lost time and effort required to mitigate the actual and potential impact of the Data Breach on their lives, including, *inter alia,* that required to place "freezes" and "alerts" with credit reporting agencies, to contact financial institutions, to close or modify financial and medical accounts, to closely review and monitor credit reports and various accounts for unauthorized activity, and to file police reports; and Plaintiff and other Class Members have been put at increased risk of future identity theft, fraud, and/or misuse of their Confidential Information, which may take months if not years to manifest, discover, and detect.

231. Plaintiff and Class Members are therefore entitled to damages, including restitution and unjust enrichment, disgorgement, declaratory and

injunctive relief, and attorney fees, costs, and expenses.

## COUNT IX

## BREACH OF IMPLIED CONTRACT

## (On Behalf of Plaintiff and the Classes)

232. Plaintiff restates and realleges all of the foregoing Paragraphs as if fully set forth herein.

233. Plaintiff and Class Members were required to provide their Confidential Information to Defendant as a condition of their use of Defendant's services. By providing their Confidential Information, and upon Defendant's acceptance of such information, Plaintiff and all Class Members, on one hand, and Defendant, on the other hand, entered into implied-in-fact contracts for the provision of data security, separate and apart from any express contracts concerning Defendant's services to be provided by Defendant to Plaintiff.

234. These implied-in-fact contracts obligated Defendant to take reasonable steps to secure and safeguard Plaintiff's and other Class Members' Confidential Information. The terms of these implied contracts are further described in the federal laws, state laws, and industry standards alleged above, and Defendant expressly assented to these terms in their Notice of Privacy Practices and other public statement described above.

235. Plaintiff and Class Members paid money, or money was paid on their behalf, to Defendant in exchange for services, along with Defendant's promise to protect their health information and other Confidential Information from unauthorized disclosure.

236. In their written privacy policies, Defendant expressly promised Plaintiff and Class Members that it would only disclose Confidential Information under certain circumstances, none of which relates to the Data Breach.

237. Defendant promised to comply with HIPAA standards and to make sure that Plaintiff's and Class Members Confidential Information would remain

protected.

238. Implicit in the agreement between Plaintiff and Class Members and the Defendant to provide Confidential Information was Defendant's obligation to (a) use such Confidential Information for business purposes only; (b) take reasonable steps to safeguard that Confidential Information; (c) prevent unauthorized disclosures of the Confidential Information; (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Confidential Information; (e) reasonably safeguard and protect the Confidential Information of Plaintiff and Class Members from unauthorized disclosure or uses; and (f) retain the Confidential Information only under conditions that kept such information secure and confidential.

239. Without such implied contracts, Plaintiff and Class Members would not have provided their Confidential Information to Defendant.

240. Plaintiff and Class Members fully performed their obligations under the implied contract with Defendant; however, Defendant did not.

241. Defendant breached the implied contracts with Plaintiff and Class Members by failing to conduct the following:

a. reasonably safeguard and protect Plaintiff's and Class Members Confidential Information, which was compromised as a result of the Data Breach;

b. comply with their promise to abide by HIPAA;

c. ensure the confidentiality and integrity of electronic protected health information that Defendant created, received, maintained, and transmitted in violation of 45 C.F.R 164.306(a)(1);

d. implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R 164.312(a)(1);

e. implement policies and procedures to prevent, detect, contain,

and correct security violations in violation of 45 C.F.R 164.308(a)(1);

f. identify and respond to suspected or known security incidents; mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R 164.308(a)(6)(ii); and

g. protect against any reasonably anticipated threats or hazards to the security or integrity of electronic protected health information in violation of 45 C.F.R 164.306(a)(2).

242. As a direct and proximate result of Defendant's breach of the implied contracts, Plaintiff and other Class Members have suffered a variety of damages including but not limited to: the lost value of their privacy; they did not get the benefit of their bargain with Defendant; they lost the difference in the value of the secure health services Defendant promised and the insecure services received; the value of the lost time and effort required to mitigate the actual and potential impact of the Data Breach on their lives, including, *inter alia*, that required to place "freezes" and "alerts" with credit reporting agencies, to contact financial institutions, to close or modify financial and medical accounts, to closely review and monitor credit reports and various accounts for unauthorized activity, and to file police reports; and Plaintiff and other Class Members have been put at an increased risk of identity theft, fraud, and/or misuse of their Confidential Information, which may take months if not years to manifest, discover, and detect.

**COUNT X**

**UNJUST ENRICHMENT**

**(On Behalf of Plaintiff and the Classes)**

243. Plaintiff restates and realleges all of the foregoing Paragraphs as if fully set forth herein.

244. Plaintiff and Class Members conferred a monetary benefit on Defendant. Specifically, they purchased goods and services from Defendant and in so doing provided Defendant with their Confidential Information. In exchange,

Plaintiff and Class Members should have received from Defendant the goods and services that were the subject of the transaction and have their Confidential Information protected with adequate data security.

245. Defendant knew that Plaintiff and Class Members conferred a benefit which Defendant accepted. Defendant profited from these transactions and used the Confidential Information of Plaintiff and Class Members for business purposes.

246. The amounts Plaintiff and Class Members paid for goods and services were used, in part, to pay for use of Defendant's network and the administrative costs of data management and security.

247. Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

248. Defendant failed to secure Plaintiff's and Class Members Confidential Information and, therefore, did not provide full compensation for the benefit Plaintiff and Class Members provided.

249. Defendant acquired the Confidential Information through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

250. If Plaintiff and Class Members knew that Defendant had not reasonably secured their Confidential Information, they would not have agreed to Defendant's services.

251. Plaintiff and Class Members have no adequate remedy at law.

252. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to (a) actual identity theft; (b) an increased risk of identity theft, fraud, and/or misuse of their Confidential Information; (c) the loss of the opportunity of how their Confidential Information is used; (d) the compromise, publication, and/or theft of

their Confidential Information; (e) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Confidential Information; (f) lost opportunity costs associated with efforts expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (g) the continued risk to their Confidential Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Confidential Information in their continued possession; and (h) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Confidential Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

253. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

254. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiff and Class Members overpaid for Defendant's services.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff on behalf of herself and all members of the Classes, request judgment against the Defendant and that the Court grant the following relief:

A. An order certifying this action as a class action under Federal Rule of Civil Procedure 23, defining the Classes requested herein, appointing the undersigned as Class Counsel, and finding that Plaintiff is a proper representative of the Classes requested herein;

B. Injunctive relief requiring Defendant to (1) strengthen their data security systems that maintain personally identifying information to comply with the applicable state laws alleged herein (including, but not limited to, the California Customer Records Act) and best practices under industry standards; (2) engage third-party auditors and internal personnel to conduct security testing and audits on Defendant's systems on a periodic basis; (3) promptly correct any problems or issues detected by such audits and testing; and (4) routinely and continually conduct training to inform internal security personnel how to prevent, identify and contain a breach, and how to appropriately respond;

C. An order requiring Defendant to pay all costs associated with class notice and administration of class-wide relief;

D. An award to Plaintiff and all members of the Classes of compensatory, consequential, incidental, nominal, and statutory damages, restitution, and disgorgement, in an amount to be determined at trial;

E. That the Court award statutory damages, trebled, and/or punitive or exemplary damages, to the extent permitted by law, including but not limited to the following:

a. Compensatory damages, punitive damages not to exceed three thousand dollars ($3,000), attorneys' fees not to exceed one thousand dollars ($1,000), and the costs of litigation under Civil Code § 56.35;

b. Nominal damages of one thousand dollars ($1,000) for each violation under Civil Code § 56.36(b)(1);

c. Actual damages suffered, according to proof, for each violation under Civil Code § 56.36(b)(2);

d. Damages pursuant to Civil Code §§ 1798.84(b) and 1798.150, including, but not limited to, not less than $100 and not greater than

$750 per California Subclass Member per incident or actual damages, whichever is greater, pursuant to Cal. Civ. Code § 1798.150(a)(1)(A);

e. Injunctive relief pursuant to Civil Code § 1798.84(e); and

f. All other damages, injunctive relief, attorneys' fees, expenses and costs permitted by law or statute.

F. An award of credit monitoring and identity theft protection services to Plaintiff and all members of the Classes;

G. An award of attorneys' fees, costs, and expenses, as provided by law or equity;

H. An award for equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

I. An order requiring Defendant to pay pre-judgment and post-judgment interest, as provided by law or equity; and

J. Any such other and further relief as this Court may deem just and proper.

Dated: July 2, 2024

Respectfully Submitted,

*<u>/s/ Daniel S. Robinson</u>*
Daniel S. Robinson (SBN 244245)
Michael W. Olson (SBN 312857)
**ROBINSON CALCAGNIE, INC.**
19 Corporate Plaza Dr.
Newport Beach, CA 92660
(949) 720-1288; Fax: (949) 720-1292
drobinson@robinsonfirm.com
molson@robinsonfirm.com

*/s/ Todd S. Garber*
Todd S. Garber (Pro Hac Vice Forthcoming)
**FINKELSTEIN, BLANKINSHIP**
FREI-PEARSON & GARBER, LLP
One North Broadway, Suite 900
White Plains, New York 10601
(914) 298-3281
tgarber@fbfglaw.com

*Attorneys for Plaintiff and The Proposed Class*

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury of all issues in this action so triable of right.

Dated: July 2, 2024

Respectfully Submitted,

*/s/ Daniel S. Robinson*
Daniel S. Robinson (SBN 244245)
Michael W. Olson (SBN 312857)
**ROBINSON CALCAGNIE, INC.**
19 Corporate Plaza Dr.
Newport Beach, CA 92660
(949) 720-1288; Fax: (949) 720-1292
drobinson@robinsonfirm.com
molson@robinsonfirm.com

*/s/ Todd S. Garber*
Todd S. Garber (Pro Hac Vice Forthcoming)
**FINKELSTEIN, BLANKINSHIP**
FREI-PEARSON & GARBER, LLP
One North Broadway, Suite 900
White Plains, New York 10601
(914) 298-3281
tgarber@fbfglaw.com

*Attorneys for Plaintiff and The Proposed Class*